UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OLIN CLARK and
CHRIS CLARK,

    Plaintiffs,

v.

GILBERTO OLIVIERA,
JAMES HANSON,
ANDREW HAYES,
MICHIGAN DEPARTMENT OF STATE
POLICE,

    Defendants.

Case No. 2:15-cv-14041
Honorable Laurie J. Michelson

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [12]**

In November 2013, Plaintiff Olin Clark, driving in snowy conditions, collided with Defendant Gilberto Oliviera's police cruiser. Defendant James Hanson investigated and concluded in his report that Olin was at fault. Olin and his father, Plaintiff Chris Clark, maintain otherwise. And they believe that the erroneous at-fault determination is, or soon will, adversely affect them. For example, they fear harm to Olin's reputation and increased costs for auto insurance. The Clarks thus filed this lawsuit, alleging that the erroneous police report has caused violations of their rights under the Constitution. They ask this Court to issue an injunction to correct the report and to declare unconstitutional the state process for contesting insurance rate increases.

Defendants have moved for dismissal on various grounds. (R. 12.) Having reviewed the parties' briefs, the Court will forgo oral argument. *See* E.D. Mich. LR 7.1(f). For the reasons set out below, the Court finds that it lacks subject-matter jurisdiction over the Clarks' claims against

the Michigan Department of State Police and over their claims based on Olin's blemished driving record. As for the Clarks' claim that Michigan provides constitutionally inadequate procedures for challenging insurance rate increases, the Court finds that claim implausible. As such, the Court will GRANT Defendants' motion.

# I.

Given the nature of Defendants' motion, the Court presents the non-conclusory allegations of the Clarks' amended complaint as fact. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

On November 13, 2013, Olin Clark was driving westbound on I-96 in Livingston County, Michigan. (R. 11, PID 42 ¶ 11.) The driving conditions were poor: snow was falling heavily with a "major accumulation of snow" already on the highway. (*Id.* ¶ 12.) Olin was driving in "approximately the left lane," and ahead of Olin on the left was a vehicle that had slid off the road. (*See id.* ¶¶ 13, 14.) Michigan State Trooper Gilberto Oliveira, who had been driving in "approximately the center lane," apparently saw the disabled vehicle and "moved left into" Olin's "right of way[.]" (*See id.* ¶ 15.) Olin "immediately" applied his breaks, but he "was unable to stop due to the infringement of his right of way and struck the right rear corner of Oliveira's patrol car." (*Id.* ¶¶ 15, 18.) Defendant Andrew Hayes (also a state trooper) was a passenger in Oliveira's car. (*Id.* ¶ 19.)

Michigan State Trooper James Hanson investigated the accident. (R. 11, PID 42 ¶ 20.) Hanson's report contained a number of errors, including that the "Crash Type" indicated a rear end collision instead of a right-of-way infringement; that Oliveira's "Hazardous Action" was "None"; that Clark's "Hazardous Action" was "speed too fast"; that the narrative portion of the report claimed that Oliveira's car was stationary at the time of collision (when in fact it was

moving); and that the narrative said that Clark had "lost control" prior to the collision. (R. 11, PID 43–44; R. 27, PID 229–30.) Hanson neither interviewed Olin nor the passenger in Olin's vehicle in preparing his report. (R. 11, PID 45 ¶ 27.)

In February 2014, apparently having reviewed the video from Oliveira's patrol car (which the Clarks maintain shows that Oliveira's car was not stationary at the time of collision but instead moving from right to left), the Clarks' lawyer sent an employee misconduct complaint to the Professional Standards Section of the Michigan Department of State Police, outlining the errors in Hanson's report. (R. 11, PID 44 ¶ 23–25.)

A lieutenant with the Professional Standards Section responded to the Clarks via letter, agreeing with the Clarks to the extent that some "minor corrections . . . needed to be made on the UD-10 [report]." (R. 27, PID 238.) These included changing the number of lanes on I-96 (2 changed to 3), the direction of travel on the highway (eastbound changed to westbound), and Oliveira's status at the time of collision (stopped changed to slowing or stopping). (R. 27, PID 238.) But the letter also stated, "I have reviewed the applicable police reports and, in conjunction with other state police commanders, have determined that Mr. Clark was properly listed as the, [*sic*] at fault driver, in the traffic crash." (*Id.*)

In late March 2014, the Clarks' lawyer sent a letter to the Michigan Department of State Police Commander, asking that the UD-10 report be further corrected and that "the troopers be disciplined for their false statements." (R. 11, PID 45 ¶ 29.) A captain replied that they would make no further corrections to the report and that they would take no disciplinary action against the troopers. (*Id.* ¶ 30.)

The Clarks' counsel also contacted the Michigan Department of State asking that department to correct Olin's driving record. (R. 11, PID 46 ¶ 32.) The Department informed the

Clarks that the only way that his driving record could be changed was if the Michigan Department of State Police submitted an amended report. (*Id.* ¶ 33.)

Having not received the relief he sought from either the State Police or the Department of State, Olin and his father, Chris Clark, filed this lawsuit against the Michigan Department of State Police, Oliveira, Hayes, and Hanson. (Chris owned and insured the vehicle Olin was driving. (*See* R. 27, PID 201.)) Although their amended complaint is not a model of clarity, it appears that the Clarks believe they have been injured in four ways: that the "at-fault" designation on Olin's driving record may result in harm to Olin's reputation, that the at-fault designation may affect Olin's driving privileges, that the lessor of Oliveira's patrol car has demanded payment for the damage to the car, and that their insurance costs have risen or may rise. (*See* R. 11, PID 45 ¶ 30; R. 11, PID 46 ¶ 39; R. 27, PID 197–98, 206, 210.) The Clarks ask this Court to remedy these harms in two ways: by "enjoining Michigan State Police from maintaining the false and inaccurate report including, but not limited to, preparing a corrected report and submitting it to the Michigan Department of State Police and its lessor" and by declaring a number of state laws pertaining to the process of challenging insurance rates to be unconstitutional or inadequate. (R. 11, PID 51.)[1]

## II.

Before turning to the merits, the Court must address two issues that pertain to its subject-matter jurisdiction: sovereign immunity and the Clarks' standing to pursue certain claims.

## A.

"[T]he Eleventh Amendment is a true jurisdictional bar that courts can—but are not required to—raise *sua sponte* at any stage in litigation, and, once raised as a jurisdictional defect,

---

[1] Plaintiffs' amended complaint asks for monetary damages as well (R. 11, PID 51), but they have since abandoned their request for that relief (*see* R. 27, PID 216, 223 & n.3).

must be decided before the merits." *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015). Here, the Michigan Department of State Police asserts Eleventh Amendment, or perhaps more precisely, sovereign immunity. (R. 12, PID 77–79.) Having considered the parties' positions, the Court finds it lacks jurisdiction over the Department.

This Court has previously found that the Michigan Department of State Police is part of the State of Michigan for purposes of state sovereign immunity. *Crawford v. Michigan Police*, No. 13-CV-11551, 2014 WL 103562, at *2 (E.D. Mich. Dec. 18, 2014) (Michelson, J.), *report and recommendation adopted by* 2014 WL 103562 (E.D. Mich. Jan. 10, 2014) (Murphy, J.). And the doctrine of state sovereign immunity "deprives federal courts of subject-matter jurisdiction when a citizen sues his own State unless the State waives its immunity or Congress abrogates that sovereign immunity." *Russell*, 784 F.3d at 1046 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100 (1984)). The State of Michigan has not waived its sovereign immunity and, in enacting 42 U.S.C. § 1983, Congress did not abrogate it. *Crawford*, 2014 WL 103562, at *2. And the jurisdictional bar of sovereign immunity applies regardless of the nature of the relief sought. *Pennhurst*, 465 U.S. at 100–01.

That would be the end of the matter, except that the Clarks argue that their claim against the Department falls under the exception to sovereign immunity created in *Ex parte Young*, 209 U.S. 123 (1908). (R. 27, PID 223–25.) Under *Young*, a state official may (generally speaking) be sued for prospective, injunctive relief. *See Pennhurst*, 465 U.S. at 102; *Fisher v. Overton*, 124 F. App'x 325, 328 (6th Cir. 2005). The Clarks argue that is precisely the relief they seek against the Department in this case. (R. 27, PID 224.)

The problem with the Clarks' assertion of *Ex parte Young* is that instead of suing some Department official, they have sued the Department itself. And while this would seem to make

5

little practical difference given that any injunction against the head of the Department in his or her official capacity would have the same effect as an injunction against the Department, *cf. Russell*, 784 F.3d at 1046 (providing that a suit against a state official in his official capacity is "a suit against the State itself"), it ignores the theory of *Young*. "The theory of the case was that [a state's] unconstitutional enactment is 'void' and therefore does not 'impart to [the officer] any immunity from responsibility to the supreme authority of the United States.'" *Pennhurst*, 465 U.S. at 102 (quoting *Young*, 209 U.S. at 160). Since the state could not authorize the officer's unconstitutional action, "the officer was 'stripped of his official or representative character and [was] subjected to the consequences of his official conduct.'" *Id.* (quoting *Young*, 209 U.S. at 160); *see also Michigan Corr. Org. v. Michigan Dep't of Corr.*, 774 F.3d 895, 904 (6th Cir. 2014) ("The [*Young*] exception rests on the theory that, at least for purposes of prospective relief, a state official who violates federal law is 'stripped of his official or representative character.'"). The Clarks have provided no explanation for how the Department—i.e., the State of Michigan itself—would be stripped of its official character should it violate federal law. Accordingly, the Court finds that the exception of *Young* does not permit this Court to exercise jurisdiction over the Department. *See also Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 654 (6th Cir. 2007) (finding, where plaintiffs sued under § 1983 for declaratory and injunctive relief, that "the state itself is not a properly named defendant, as it is shielded from suit under the doctrine of sovereign immunity").

**B.**

Defendants also assert that the Clarks lack standing to seek injunctive and declaratory relief. (R. 12, PID 62–66.) According to Defendants, it is speculative that the Clarks will "again be involved in [an] auto collision where a police report is created and fault is determined." (R.

6

12, PID 66.) And regarding the accident that did occur, Defendants argue that "[n]o adverse action has happened as a result of the fault determination." (R. 19, PID 160.) In other words, Defendants claim that the Clarks are not suffering from any "'continuing, present adverse effects'" from the November 2013 accident, and so they do not have standing to pursue an injunction or declaratory judgment. (*See* R. 12, PID 64 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)).)

To have standing "when seeking declaratory and injunctive relief, a plaintiff must show actual present harm *or a significant possibility of future harm* in order to demonstrate the need for pre-enforcement review." *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 832 (6th Cir. 2001) (emphasis added). And at the pleading stage, this future harm only has to be plausible, not proven. *See Lujan*, 504 U.S. at 561; *White v. United States*, 601 F.3d 545, 551–52 (6th Cir. 2010).

The Court examines separately the standing of each plaintiff, beginning with Chris. Although not made clear in their complaint, Chris is a party to this action because he owned and insured the vehicle that Olin was driving at the time of the accident. (R. 27, PID 201.) The Clarks have alleged that the at-fault determination in Hanson's report could increase the cost of Chris's automotive insurance. (*See* R. 11, PID 46, 49; *see also* R. 27, PID 197.) This claim has support: Michigan law requires auto insurers to establish a plan for insurance (other than for comprehensive insurance) that "provide[s] for premium surcharges" based on convictions, civil infractions, and, most relevant here, "[s]ubstantially at-fault accidents." Mich. Comp. Laws § 500.2111. The Court thus finds it plausible that Chris's insurance costs have or will increase due to Olin's accident or that the increase has "a significant possibility," *Grendell*, 252 F.3d at 832, of occurring. Thus, Chris has suffered an injury sufficient to seek an injunction directing

7

Defendants to correct Hanson's report and to seek a declaration that Michigan's procedure for challenging insurance-rate increases is unconstitutional.

To the extent that Olin also complains of increased auto-insurance costs, he has suffered an injury sufficient to seek injunctive and declaratory relief for almost the same reason that Chris has. "Almost" because it unclear whether Olin pays for his own auto insurance. As noted, the Clarks say that Chris owned and insured the vehicle Olin was driving; so it may be that Olin (who was age 20 at the time of the accident) was (and is) covered under Chris's insurance. That said, the complaint references "a negative impact on Plaintiff Olin Clark's standing with his insurance company." (R. 11, PID 46.) Based on this, the Court assumes that Olin is not insured solely under his father's policy. And under that assumption, it is plausible that there is a significant possibility that Olin is paying or will soon pay more for auto insurance.

The foregoing does not end the standing analysis as to Olin, however. Olin also complains that, without due process, his driving record has been blemished with an at-fault accident designation. (*See* R. 11, PID 46; *see also* R. 27, PID 197.) Olin argues that because the blemished driving record is publicly accessible, he could suffer reputational injury. (R. 27, PID 206.) He also notes that Michigan law makes the record admissible in court, implying that he could be injured by the introduction of an allegedly false report in a civil or criminal proceeding. (*Id.*) Olin further points out that the at-fault determination on his record could impair his ability to maintain a driver's license. (R. 11, PID 212.)

The Court believes that Olin lacks standing to pursue a due-process claim based on his allegedly inaccurate driving record. It is not plausible that any of the injuries that Olin attributes to his blemished driving record are "imminent." *Lujan*, 504 U.S. at 560.

Regarding Olin's reputation, he has pled no facts indicating that anyone (other than maybe his insurer) has tried to obtain—or has any reason to obtain—a copy of his driving record. As such, any reputational injury remains "conjectural or hypothetical" on the facts alleged. *See Lujan*, 504 U.S. at 560.[2]

As for Olin's suggestion that his driving record is automatically admissible at trial—that is not quite correct. Michigan law provides that a copy of a driving record "shall be admissible in a proceeding in a court *in the same manner* as the original record" and that the copy "shall be *prima facie* evidence of the contents of and the facts stated on the record." Mich. Comp. Laws § 257.207 (emphasis added). In any event, Olin does not allege that he is now or will soon be involved in any litigation, let alone that his driving record would be relevant to any such litigation. Any harm based on the use of Olin's record in court is thus "conjectural or hypothetical" on the facts alleged.

Regarding license revocation, the amended complaint lacks factual allegations suggesting that this is even remotely likely. The accident giving rise to this case happened three years ago and any possibility of a license revocation because of the at-fault designation seems to have expired in the interim. In Michigan, license-suspension points more than two years old are not counted toward suspension. *See* Mich. Comp. Laws § 257.320(1)(d). And while three accidents (where "the official police report indicates a moving violation") might result in a license suspension—that is only the case if the three occur in a two-year period. *See* Mich. Comp. Laws

---

[2] Even if the Court were to find that Olin has standing to bring a due-process claim based on reputational injury, it appears that such a claim would be subject to dismissal on the merits. *See Paul v. Davis*, 424 U.S. 693, 712 (1976) ("[The police chiefs'] defamatory publications, however seriously they may have harmed respondent's reputation, did not deprive him of any 'liberty' or 'property' interests protected by the Due Process Clause."); *Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir. 2002) ("[D]efamation alone is not enough to invoke due process concerns."); *Buckley v. Fitzsimmons*, 20 F.3d 789, 797 (7th Cir. 1994) ("[A] person's interest in his reputation is neither 'liberty' nor 'property' for purposes of the due process clause.").

§ 257.320(1)(c). Finally, although Michigan requires insurance to drive, and a person can become ineligible for insurance if they accumulate six insurance points in a three-year period, *see* Mich. Comp. Laws § 500.2103(h), the November 2013 accident at most resulted in four such points, *see* Mich. Comp. Laws § 500.2103(4)(b), and, as noted, it is now three years later. As such, any infringement on Olin's right to drive is "conjectural or hypothetical" on the facts alleged.

Before leaving the issue of standing, the Court notes that in their amended complaint, and again in their response to Defendants' motion, the Clarks assert that the lessor of Oliveira's patrol car demanded that Chris (and possibly Olin) pay for the damage to the vehicle. (R. 11, PID 45, 46; R. 27, PID 197.) The complaint indicates that these demands occurred in the spring of 2014. (R. 11, PID 45.) As it is now the fall of 2016 and the Clarks allege no further demands, the Court finds any injury from the lessor's demands to also be "conjectural or hypothetical" on the facts alleged.

In sum, based on possible increased costs in obtaining or maintaining auto insurance, the Clarks have demonstrated the requisite injury to seek an injunction ordering Oliveira, Hayes, and Hanson to correct the police report and to seek a declaration that Michigan's procedure for challenging insurance-rate increases is unconstitutional.[3]

---

[3] Given the Court's finding that it lacks jurisdiction over the Clarks' claims against the Michigan Department of State Police, any injunction to correct the police report could run only against the individual state troopers that the Clarks have sued. But it is questionable, given the review by the Professional Standards Section and the review by Hanson's superiors at the Department, that these defendants are those against whom an injunction should run.

The Court also doubts that the Clarks have sued the proper entity to seek a declaratory judgment that Michigan's procedures for challenging an insurance rate increase are unconstitutional. Presumably the state officials charged with administering that process would have an interest in defending the Clarks' claim.

10

### III.

Given the foregoing, remaining for merits consideration is the Clarks' claim that the procedures Michigan has made available to them to challenge insurance rate increases are so deficient that any increase runs afoul of the Due Process Clause of the Fourteenth Amendment. Because Defendants ask for dismissal under Federal Rule of Civil Procedure 12(b)(6), the question is whether the claim as pled is plausible. *See Aschcroft Corp. v. Iqbal*, 556 U.S. 662, 678 (2009).

Two aspects of the Clarks' due process claim require initial consideration. First, Defendants are not their insurer (it's State Farm), and so any rate increase is not directly attributable to Defendants. *See Baker v. McCollan*, 443 U.S. 137, 142 (1979) ("[A] public official is liable under § 1983 only if he causes the plaintiff to be subjected to a deprivation of his constitutional rights." (internal quotation marks and citation omitted)). But this might be overlooked, since it is plausible that the proximate cause of the insurance rate increase is the police report prepared by Hanson. *McKinley v. City of Mansfield*, 404 F.3d 418, 438 (6th Cir. 2005) ("Causation in the constitutional sense is no different from causation in the common law sense."); *Staub v. Proctor Hosp.*, 562 U.S. 411, 419 (2011) ("[I]t is axiomatic under tort law that the exercise of judgment by the decisionmaker does not prevent the earlier agent's action . . . from being the proximate cause of the harm."). Second, it is far from apparent that the constitution guarantees any particular auto insurance rate. *See Daily Servs., LLC v. Valentino*, 756 F.3d 893, 904 (6th Cir. 2014) ("To establish a procedural due process claim, a plaintiff must show that . . . it had a life, liberty, or property interest protected by the Due Process Clause[.]").

---

Because no one has addressed these two issues, and because the Court ultimately finds that the procedures for challenging an insurance rate increase do not violate the Due Process Clause, the Court declines to address them further.

11

But this too might be overlooked, as money is "property" shielded by the Due Process Clause. *Herrada v. City of Detroit*, 275 F.3d 553, 556 (6th Cir. 2001).

The dispositive question then is whether it is plausible that Michigan fails to provide constitutionally adequate procedures in depriving insureds of constitutionally protected property. *See Valentino*, 756 F.3d at 904. The Court believes the answer to this question is "no."

In deciding "how much process is due," courts weigh several factors:

> "[1] the private interest that will be affected by the official action; [2] the risk of an erroneous deprivation[;] . . . [3] the probable value, if any, of additional or substitute procedural safeguards; and [4] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Shoemaker v. City of Howell*, 795 F.3d 553, 559 (6th Cir. 2015) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

Regarding the first factor, the Clarks suggest that their insurance rates may have increased on the order of about $300 a year. (*See* R. 27, PID 255.) Relative to other deprivations of property (e.g., loss of welfare benefits) and liberty (e.g., wrongful incarceration), the Court does not find this to be a significant property interest. *See Shoemaker*, 795 F.3d at 561 ("[T]he property interest at issue here—$600 in fines and fees over 16 months—is relatively minor.").

The Court considers together the second and third factors and finds that they favor a finding that Michigan's process for challenging insurance rate increases is constitutionally adequate. Viewed in a vacuum, the risk of erroneous deprivation is not insignificant: it is often not clear who was at fault in an accident. But the risk of erroneous deprivation is minimal when viewed in light of Michigan's robust process for challenging rate increases (and, for this reason, "the probable value . . . of additional or substitute procedural safeguards," *Shoemaker*, 795 F.3d at 559, is not great). Under Michigan law, an insured who is subject to an increased premium (or

offered coverage on terms less than the insured desires, *see* Mich. Comp. Laws § 500.2102(4)), has several opportunities to challenge the insurer's determination, *see* Mich. Comp. Laws § 500.2113. The insured may first seek a "private informal managerial-level conference with the insurer." Mich. Comp. Laws § 500.2113(1). At this step, the insurer must provide a means by which the insured can obtain the information leading to the premium charge and, following the conference, set forth, "with supporting documentation," the reasons for its decision. Mich. Comp. Laws § 500.2113(2); Mich. Admin. Code R. 500.1509. Should the insured still feel aggrieved, Michigan provides the insured the right to appear before Michigan's insurance commissioner who can either decide the dispute on the briefs or conduct a meeting where the parties can "present relevant facts, records, dates, times, and names to substantiate the positions." Mich. Admin. Code R. 500.1511; *see also* Mich. Comp. Laws § 500.2113. The commissioner is required to supply a written decision. Mich. Admin. Code R. 500.1512. Should the insured remain dissatisfied, he may then seek a hearing under Michigan's administrative procedures act, Mich. Comp. Laws § 500.2113(5), and, ultimately, state court, *see* Mich. Comp. Laws § 24.301. All of this strongly suggests that the risk of an erroneous rate hike is minimal and that additional process would not significantly benefit insureds.

The Clarks argue otherwise. They believe that the following additional procedural safeguards are constitutionally required: that the challenge process begin at least at the second step (the commissioner's review), that the regulations implementing the process set out the burdens of proof and persuasion, and that the commissioner be granted the power to order reimbursement for erroneous rate hikes. (*See* R. 27, PID 221–22.)

The Court is not persuaded. As to the first point, there is nothing unduly burdensome about requiring an insured to first try to work things out with his insurer. The Court sees no

reason why the informal managerial meeting must be expensive or time consuming (indeed, it may be conduct by phone, *see* Mich. Admin. Code R. 500.1508(2)(c)). And while the Clarks claim that the insurer is financially biased to deny claims (R. 27, PID 219–20), it may well be the case that an insurer's financial interest in maintaining an insured as a customer outweighs the temptation to unjustly deny an insured's claim.

As for the Clarks' assertion that the regulations should spell out the burdens of proof and persuasion, the Court agrees that this would lend additional clarity to the process and ease decisionmaking. But it is less apparent that defined burdens would lead to more *equitable* decisionmaking. Insurers are already required to establish "reasonable" internal procedures that "protect[] the interests of both the person and the insurer." Mich. Comp. Laws § 500.2113(2). And the insurance commissioner is likewise required to "protect[] the interests of both the person and the insurer," Mich. Comp. Laws § 500.2113(4), and must "base his or her decision upon the written materials submitted by the parties and the statements of the parties at the meeting, if any," Mich. Admin. Code R. 500.1511.

Largely for this reason, the Court does not find analogous, as the Clarks do, the procedure deemed unconstitutional in *State of Washington ex rel. Seattle Title Trust Co. v. Roberge*, 278 U.S. 116 (1928). In that case, a zoning ordinance permitted those who owned land surrounding a property to preclude the property from being used as a "philanthropic home for children or old people." *Id.* at 118, 120. The Supreme Court found that the city's delegation of power to the land owners violated the Due Process Clause because the owners could deny the right to build the philanthropic home "for selfish reasons or arbitrarily," the owners were not bound by any official duty, and there was no means to review the owners' decision—their say was final. *Id.* at 122. In contrast, the procedure for challenging an insurer's decision in this case provides an insured the

opportunity to obtain review by neutral decisionmakers who are bound by official duty: the insurance commissioner and then an administrative law judge. *Roberge* is thus inapposite.

As for the Clarks' claim that the commissioner should have the authority to require an insurer to reimburse an insured for an improper rate increase, it is not apparent that the regulations preclude the commissioner from providing this relief. The Clarks reach this conclusion based on Rule 500.1514. (*See* R. 27, PID 220–21.) But that Rule provides (in relevant part) that if the commissioner finds that coverage was improperly terminated, the insured may elect to have coverage reinstated with the terminating insurer "subject" to several "conditions," including that the terminating insurer pay the insured for the costs of interim coverage (insofar as those costs are more than the insured would have paid had coverage not been improperly terminated). *See* Mich. Admin. Code R. 500.1514. In other words, the regulation sets forth a condition for reinstatement with the terminating insurer—not a list of all possible remedies that the commissioner may award should the insured prevail on his complaint.

The last procedural-due-process factor—"the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail," *Shoemaker*, 795 F.3d at 559—also does not suggest that Michigan's procedure for challenging insurance premiums is constitutionally deficient. To be sure, the Clarks are correct that for the regulations to spell out the burdens of proof and persuasion, Michigan would incur little or no costs. On other hand, the State may well have an interest in keeping the first two steps of the process informal. As for the Clarks' suggestion that the challenge process begin with the commissioner, this would impose increased administrative burden and costs for the State: insureds at least sometimes receive satisfactory relief from their insurers when they complain.

To sum up, the property interest at stake, a few hundred dollars a year, does not demand considerable process. And even if it did, Michigan provides considerable process. Further, additional process would not likely reduce the risk of an erroneous rate increase while some of the procedures proposed by Clark would undermine Michigan's interests in resolving insurance disputes. In all then, the Court finds that Michigan's procedures for challenging insurance rate increases are not so deficient that they run afoul of the Due Process Clause of the Fourteenth Amendment.

## IV.

For the foregoing reasons, all claims against the Michigan Department of State Police are DISMISSED for lack of subject-matter jurisdiction: the Department is immune from suit in federal court. Further, all claims based on an at-fault designation appearing on Olin Clark's driving record are also DISMISSED for lack of subject-matter jurisdiction: the Clarks presently lack standing to pursue those claims. Finally, the Clarks' due-process claim based on current or imminent insurance-rate increases is DISMISSED for failure to state a claim upon which relief may be granted: it is implausible that Michigan has not provided constitutionally adequate procedures for challenging rate increases.

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
Dated: November 21, 2016          U.S. DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 21, 2016.

s/Keisha Jackson
Case Manager